UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA         :        **DECLARATION**

      - v. -                   :        13 Cr. 143 (LTS)

JUDITH P. FADUL,                 :

      DEFENDANT.               :

------------------------------x

    I, **JONATHAN MARVINNY, ESQ.**, hereby declare under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that:

    1.   I am an attorney associated with the Federal Defenders of New York and have been appointed by the Court to represent defendant Judith Fadul in this action. I make this declaration in support of a motion pursuant to Rule 12 of the Federal Rules of Criminal Procedure to suppress evidence and statements obtained in violation of the Fourth and Fifth Amendment to the United States Constitution or, in the alternative, for an evidentiary hearing.

    2.   The statements contained in this declaration are based on information and belief, the declarations of Ms. Fadul and Yazmin Delarosa, which are attached as Exhibits A and B, respectively, and my review of documents and other evidence in this case.

    3.   On September 11, 2012, after a search of her apartment at 2825 Claflin Avenue, Aparment 4K, in the Bronx, Ms. Fadul was

arrested by the NYPD and charged with, <u>inter alia</u>, narcotics and weapon possession. Ms. Fadul has no prior criminal record. On January 30, 2013, she was presented in federal court on the basis of a complaint. A copy of the complaint is on file with the Court. The state prosecution was subsequently dismissed in favor of the federal prosecution.

4. Ms. Fadul was indicted on February 28, 2013, and charged with one count of uttering counterfeit obligations, 18 U.S.C. § 472, and one count of producing fictitious obligations, 18 U.S.C. § 514(a)(1). A copy of that indictment is on file with the Court. On June 28, 2013, a superseding indictment was filed. Now, in addition to the above-listed charges, Ms. Fadul is charged with conspiracy to distribute crack cocaine and marijuana, 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and (D), and 846, possession of a firearm in connection with a narcotics conspiracy, 18 U.S.C. § 924(c)(1)(A)(i), and maintaining drug-involved premises, 21 U.S.C. § 856. A copy of the superseding indictment is on file with the Court.

5. According to a sworn affidavit from Detective Greg Larsen, NYPD officers arrived at Ms. Fadul's apartment late on September 10, 2012, for the purpose of investigating marijuana complaints. Affidavit of Detective Greg Larsen ("Larsen Aff."), Exhibit C. At that point, they did not have a search warrant. <u>Id.</u> Ms. Fadul was not at home when they arrived. According to

Larsen, after the officers knocked on the door, Ms. Fadul's daughter, Yazmin Delarosa, "invited" the officers into the apartment. Id. Larsen then claims that, during a search of the apartment, he observed inside a bedroom "the handle of a black gun, a large package containing heroin packaging, a clear plastic bag containing a white powdery [substance] and a large gray machine that was ejecting photocopies of United States Currency." Id.

6.  The government recently informed counsel that Detective Larsen is under investigation by the Bronx County District Attorney's Office for possible perjury related to another drug arrest in which he was involved in July 2012 in the Bronx.

7.  Ms. Delarosa has sworn to a far different story than Detective Larsen's. Ms. Delarosa states that she was at home with her boyfriend and others when NYPD officers knocked on the apartment door. Declaration of Yazmin Delarosa ("Delarosa Decl."), Exhibit B. When she answered, the officers demanded entry, but she refused. Id. Ms. Delarosa repeatedly asked if they had a warrant, which they did not. Id. Eventually, the officers simply pushed by Ms. Delarosa and entered the apartment; at no point did she or anyone else consent to their entry. Id. Officers then huddled everyone inside the apartment

3

together in the living room, and proceeded to search the entire apartment. Id.

8. According to Ms. Fadul, by the time she returned home around 11:30 p.m., the NYPD was already searching her apartment. Declaration of Judith Fadul ("Fadul Decl."), Exhibit A. Eventually, she and everyone else inside the apartment, including her fifteen-year-old sons, were arrested and taken to the precinct.

9. At the precinct, Ms. Fadul was questioned under highly coercive circumstances. Id. She was told that she should sign a form giving the NYPD consent to return to search her apartment. Id. Officers told her that if she did not sign the form, they would call ACS to take her children away from her. Id. Under those circumstances, at 1:50 a.m. on September 11, 2012, Ms. Fadul signed the consent-to-search from. See Consent to Search Form, Exhibit D.

10. The government alleges that Ms. Fadul made incriminating statements at some point after being advised of her Miranda rights. The government has provided a sheet of paper containing those alleged statements, but no indication of exactly when and where they supposedly were made. See Exhibit E. Additionally, the government provided a letter listing several further incriminating statements allegedly made by Ms. Fadul "upon her arrest," but with no more precise information about

the circumstances under which they were made. See Government Letter of April 19, 2013, Exhibit F. In any event, it appears that Ms. Fadul was interrogated and made statements while in custody at the precinct, under the same coercive circumstances present when she signed the consent-to-search form. See Fadul Decl. ¶ 8.

11. Though Ms. Fadul signed the consent-to-search form, the NYPD did not immediately conduct another search of her apartment. Instead, Detective Larsen waited until he could apply for a search warrant from a Bronx County judge, which he did around 11:00 a.m. on September 11, 2012. See Larsen Aff. The judge then issued a search warrant, see Exhibit C, and the NYPD returned to the apartment to search it again.

12. During their search of Ms. Fadul's apartment on September 11, 2012, police recovered the previously-referenced contraband. In addition, police recovered several cell phones allegedly registered to Ms. Fadul, and four laptop computers from Ms. Fadul's bedroom. According to the government, Ms. Fadul made statements admitting that the laptops were hers and that she paid the service plan for the cell phones. Months after Ms. Fadul's arrest, the government obtained search warrants granting them permission to search the contents of those cell phones and computers. The government subsequently conducted searches of the phones and laptops and has indicated that it will seek to

5

introduce some of the content it encountered during those searches.

13. Eventually, charges were dropped against everyone who was arrested on the night in question except Ms. Fadul and Kenneth Garcia.

14. For the reasons set forth more fully in the attached Memorandum of Law, it is respectfully submitted that this Court should grant Ms. Fadul's motion to suppress or, in the alternative, conduct an evidentiary hearing.

Dated:   New York, New York
         July 1, 2013

                                                   _____
                                                   JONATHAN MARVINNY, ESQ.