

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

April 28, 2014

**BY ECF AND HAND**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE:     United States v. Fadul, S2 13-cr- 143 (JMF)

Dear Judge Furman,

The Government respectfully submits this letter in response to the request by defendant Judith P. Fadul ("Fadul" or the "defendant") to modify her bail conditions to remove the requirement of home incarceration with electronic monitoring ("Fadul Def. Ltr").

## Background

On January 23, 2013, Fadul was charged by Complaint with: 1) possessing counterfeit obligations, in violation of 18 U.S.C. § 472; 2) printing fictitious obligations, in violation of Title 18 U.S.C. § 514(a)(1); 3) possession with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 812, 841(a)(1), and (b)(1)(D); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

In September 2012, officers of the New York City Police Department ("NYPD") recovered physical evidence during a search of Fadul's apartment, located at 2825 Claflin Avenue, Bronx, New York, Apartment 4K (the "4K Apartment"). See Compl., 13 Mag. 188, at p.3.  NYPD officers recovered, among other things, uncut sheets of what appeared to be U.S. Federal Reserve Notes in denominations of $20, $10, and $5, a cutting board, a Taurus .38 Special caliber firearm (the "Firearm") loaded with six rounds of ammunition, and over eighty extra bullets, several Ziploc bags of marijuana, a Ziploc bag of heroin, a white strainer containing cocaine and heroin residue, and a scale containing cocaine, heroin, and marijuana residue.  Id. at pp. 3-4.  The Court has since suppressed the evidence seized by the NYPD.

Fadul was presented before Magistrate Judge Sarah Netburn on the Complaint.  The Government sought detention.  Fadul was released on the following bail conditions: $50,000 personal recognizance bond, to be co-signed by two financially responsible persons, secured

by $5,000 cash or property, with travel restricted to the Southern and Eastern Districts of New York, and the surrender of travel documents with no new applications, strict pretrial supervision, drug testing and treatment, home incarceration, and electronic monitoring. Fadul was to be detained until location monitoring could be established. In addition, Judge Netburn appointed Mr. Rivera, Fadul's purported uncle who was present at the bail hearing, as a third party custodian, who was to inform the Court if Fadul was not adhering to her bail conditions. Mr. Rivera has never issued any such report.

On or about February 28, 2013, Fadul was subsequently indicted in two counts for: 1) possessing counterfeit obligations, in violation of 18 U.S.C. § 472; and 2) printing fictitious obligations, in violation of 18 U.S.C. § 514(a)(1). The Government did not seek an indictment on the drug and gun charges previously charged in the Complaint at that time.

On March 6, 2013, the Court modified Ms. Fadul's bail conditions – after she tested positive for a controlled substance – to require (1) drug treatment as directed by the pretrial services officer, (2) that Fadul be prohibited from possessing firearms and other dangerous weapons, and (3) that Fadul be prohibited from associating with known felons (other than defendant's boyfriend, Kenneth Garcia). All other conditions remained in place.

On or about June 27, 2013, the grand jury returned a six-count superseding indictment, S1 13 Cr. 143 (LTS) (the "Superseding Indictment"), charging Fadul, Garcia, and Yazmin Delarosa ("Delarosa") in a narcotics conspiracy, and Fadul and Garcia with firearm and counterfeiting offenses. The gun charge against Fadul was based on part on a DNA report concluding that Fadul's DNA was consistent with the mixture of DNA found on the Firearm recovered in the 4K Apartment.

On or about November 12, 2013, the grand jury returned a second superseding indictment, S2 13 Cr. 589 (LTS) (the "Second Superseding Indictment") charging the following: Count One charges Kenneth Garcia, Fadul, Delarosa, Rebecca Marie Lawrence, Paul Edmund Brown, Brandy Keate Mitchell, Jesus Mena, Jayro Custodio, and Brian Garcia, with participating in a narcotics conspiracy involving heroin, crack-cocaine, cocaine, ecstasy, and marijuana, in violation of 21 U.S.C §§ 846 and 841(b)(1)(A), (b)(1)(B), (b)(1)(C), (b)(1)(D); Count Two charges Garcia and Fadul with possession of a weapon during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); Count Three charges Garcia with being a felon in possession of a weapon, in violation of 18 U.S.C. § 922(g); Count Four charges Fadul with maintaining a drug-involved premises, in violation of 21 U.S.C. § 856; Count Five charges Fadul and Garcia with possessing counterfeit money, in violation of 18 U.S.C. § 472; and Count Six charges Fadul and Garcia with printing fictitious obligations, in violation of 18 U.S.C. § 514.

## **Applicable Law**

Under 18 U.S.C. § 3142 (the "Bail Reform Act"), there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] and the safety of the community if the judicial officer finds there is probable cause to believe that the person committed ... an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)." Title 21, United States Code, Section 841(b)(1)(B) provides that a person who

violates that section "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years."

The burden to rebut such a presumption rests on the defendant, who must produce "evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). As to the dangerousness prong, detention must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f). As to the flight risk prong, the Court need only make these findings by a preponderance of the evidence. See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). If the defendant does produce such evidence, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

The factors to be considered in determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community" include: the nature and circumstances of the offense charged, including whether the offense involves a firearm; the history and characteristics of the defendant; the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release; and the weight of the evidence against the defendant. 18 U.S.C. § 3142(g); see also United States v. English, 629 F.3d 311, 319 (2d Cir. 2011); United States v. Jones, 566 F. Supp. 2d 288, 290 (S.D.N.Y. 2008).

## Discussion

The Government respectfully submits that the modification sought by Fadul should not be granted.

First, this is a presumption case. As discussed above, Fadul is charged with a narcotics conspiracy that places her squarely within the ambit of § 3142(e)(3). Fadul currently faces a ten-year mandatory minimum sentence. See 21 U.S.C. § 841(b)(1)(A). This alone weighs heavily in favor of detention. See, e.g., English, 629 F.3d at 321-22 (detention appropriate where defendants were charged with offenses under drug-trafficking conspiracy in violation of 21 U.S.C. § 846 with mandatory minimum prison terms).

Second, the evidence in this case is strong. Despite suppression of the evidence in Fadul's apartment that was seized in September 2012, there is still overwhelming evidence of Fadul's involvement in this narcotics conspiracy, including witness testimony, law enforcement stops in Vermont, and thousands of dollars' worth of drug proceeds Fadul received via Western Union from various charged and uncharged co-conspirators. The evidence at any trial of this matter will establish that Fadul, along with her co-conspirators transported the narcotics from New York to Vermont for sale in Vermont, where narcotics command higher prices than in New York City, by 'body-packing" the narcotics in various body crevices. The defendant and her co-conspirators packaged the narcotics in Fadul's apartment, and sold out of various stash houses in Vermont. The defendant's co-conspirators then sent the drug proceeds back to Fadul in New York via Western Union wire transfers. See Excerpt of Western Union Transactions (Exhibit A).

Third, there is a clear showing of this defendant's dangerousness to the community. In addition to the defendant's participation in the drug trafficking conspiracy described above, there is no dispute that a loaded firearm was recovered from the defendant's apartment – indeed, from a nightstand next to the defendant's bed – in September 2012 and a gun "suppressor" was found in the defendant's apartment when federal agents returned in March 2013.  Moreover, New York City's Office of the Chief Examiner's Office concluded that "there is very strong support that [Fadul] . . . contributed to [the DNA] mixture" recovered from the Firearm.  See DNA Lab Report (Exhibit B).

Fadul purportedly wants to modify the conditions of her release to remove home detention and electronic monitoring because "[s]he has amply demonstrated over these many months that she takes seriously pretrial supervision requirements and her obligations to the Court."  While this request might be appropriate in certain cases, it is not in this case because she poses a danger to the community and a flight risk as set forth above.  Moreover, there is no dispute that Fadul has already failed to comply with her bail conditions; and what's more, she continues to do so.

As described above, in the weeks immediately after her arrest, Fadul tested positive for a controlled substance.  Of even greater concern, even after that violation, Fadul admitted on prison calls with Garcia that she had violated her bail conditions in an additional respect by circumventing the location monitoring requirements imposed by Pretrial so as to leave her apartment undetected.   These recordings, which were partly in Spanish, were submitted to the Pretrial Services Officer in this case ("Pretrial").

The Government has also learned that Fadul has enabled Garcia to violate the inmate rules of the Metropolitan Correctional Center ("MCC") by accepting calls from him made from other inmate accounts and even sending funds to other inmate accounts to facilitate Garcia's violations.  See Prison Call Recording, dated July 7, 2013 at 9:25 (Exhibit C).  It bears mention that, in these same prison calls, it is readily apparent that illegal drug use is occurring in the defendant's apartment.  See Prison Call Recording, dated July 9, 2013 at 1:20 – 2:50 (Exhibit D).   Indeed, as recently as two weeks ago, agents in this case received reports of continued drug use in Fadul's apartment.

Under these circumstances, the Government continues to believe that detention is appropriate and that, short of detention, there is no basis for relaxing the defendant's present bail conditions.

## **Conclusion**

For the foregoing reasons, the Government objects to the proposed modification by Fadul and continues to adhere to its position that Fadul should be detained.

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

By:    ____/s/_____
            Amy Garzon
            Edward B. Diskant
            Assistant United States Attorneys
            (212) 637-2431/2294

CC:    Jonathan Marvinny, Assistant Federal Defender
         *Attorney for Defendant Judith Fadul*