UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

United States of America,

        -against-                        S2 13 Cr. 143 (JMF)

Judith P. Fadul,

                Defendant.
-------------------------------------------------------X

## JUDITH FADUL'S SENTENCING SUBMISSION

                                  Federal Defenders of New York
                                  Attorney for Defendant
                                  Judith Fadul
                                  52 Duane Street - 10th Floor
                                  New York, New York 10007
                                  Tel.: (212) 417-8792

                                  Jonathan Marvinny

                                  *Of Counsel*

TO:    Preet Bharara, Esq.
        United States Attorney
        Southern District Of New York
        One St. Andrew's Plaza
        New York, New York 10007
        Attn:   Edward B. Diskant, Esq.
                 Drew Johnson-Skinner, Esq.
                 Assistant United States Attorneys

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

November 10, 2014

By ECF

Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: *United States v. Judith P. Fadul*, S2 13 Cr. 143 (JMF)**

Dear Judge Furman:

Judith Fadul is a 44-year-old single mother who, until this case, had never had any serious trouble with the law. She was—and is—a loving parent who has endeavored to raise her four children responsibly, largely on her own. It might be tempting to look at the circumstances of her misconduct in this case and conclude that she has failed in that effort. But that conclusion would be wrong. She has been a committed and, in many ways, admirable parent. While some of her choices undoubtedly have been flawed, and while her misconduct in this case was serious, she is much more than the mistakes she has made.

On November 24 she will appear before the Court for sentencing, having accepted responsibility for her participation in a narcotics conspiracy. As Judge Rakoff has stated, and as the Court well knows, "Imposing a sentence on a fellow human being is a formidable responsibility. It requires a court to consider, with great care and sensitivity, a large complex of facts and factors." *United States v. Gupta*, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012). I write to provide the Court with a discussion of the challenges and successes over the course of Ms. Fadul's life and an account of how she came to commit her very first offense much later, after years of little more than hard work and devotion to her children. It is my hope that, after considering the information in this submission, the Court will conclude that a sentence far below the

| | |
|---|---|
| Honorable Jesse M. Furman | November 10, 2014 |
| United States District Judge | Page 2 of 10 |

Re:   *United States v. Judith P. Fadul*
      S2 13 Cr. 143 (JMF)

advisory Guidelines range, followed by a substantial period of supervised release, is appropriate.[1]

## Ms. Fadul's History and Characteristics[2]

Apart from one year of her childhood spent in the Dominican Republic, Judith Fadul has lived in New York City her entire life. She was born in Washington Heights in 1970. Her mother worked in a laundromat and her father was a salesman. Devout and hard-working, they were able to provide a stable middle-class life for Ms. Fadul and her two siblings.

Ms. Fadul was the oldest child. Her mother says she was "a blessing from God … a quiet, loving child since birth." Letter from Ismelda Fadul (Exhibit A). Ms. Fadul was protective and nurturing by nature, and she helped look after her brother and sister. Her mother describes how a young Ms. Fadul would stop on the way home from school to pick up her brother from his babysitter and then watch the younger children until their mother arrived home. *Id.* Ms. Fadul's sister confirms this nurturing quality: "She was so protective over me and felt that she was the strong one who had to look out for me." Letter from Edith Fadul (Exhibit B).

Ms. Fadul's was a deeply religious household where misbehavior was not tolerated. Her parents were loving, but strict. Her mother says of the children, "We made sacrifices for their education because we wanted them to have real values and respect because that is how our family is … [we] believe in God above all else." Exhibit A. Ms. Fadul's sister recounts, "Both of our parents worked a lot and in our

---

[1] Contrary to the conclusion of the Probation Office, the applicable Guidelines range is 87–108 months. The Probation Office's determination that the range is 108–135 months is based on a pre-November 1 base offense level of 32 for the drug quantity for which Ms. Fadul has been held responsible. *See* PSR ¶ 51. As of November 1, 2014, however, the base offense level for that quantity is 30. *See* U.S.S.G. § 2B1.1(c)(5).

[2] The facts in this section are drawn primarily from the PSR and conversations with Ms. Fadul.

Honorable Jesse M. Furman                                        November 10, 2014
United States District Judge                                      Page 3 of 10

Re:     *United States v. Judith P. Fadul*
        S2 13 Cr. 143 (JMF)

household we had to fulfill our duties and work together to make sure our chores were done." Exhibit B.

As the children grew older, their parents shielded them from the dangerous streets of Washington Heights in the 1980s. Ms. Fadul's parents enrolled her in a Catholic high school. She was a diligent, sheltered student.

A year before graduation, however, her life was upended. She met an older man, believed she had found true love, and soon became pregnant. Pregnancy at such a young age terrified her. Her sister says, "I remember she asked me for the Bible, that she did not know what to do." *Id.*

Her parents were furious that Ms. Fadul, still an adolescent, had sinned by becoming pregnant outside of marriage. They kicked her out of the house. She went to live with her boyfriend, but soon after giving birth to her daughter, Celeste Crespo, the new living situation became unbearable. "Everything was fine at the beginning, but problems came later … [Her boyfriend] was abusive and enjoyed his alcohol." Exhibit A. They soon separated, and Ms. Fadul, distraught and overwhelmed, dropped out of school.

Around that same time, her father left the family. He had been routinely unfaithful to Ms. Fadul's mother and one of his mistresses had become pregnant. Though by that time Ms. Fadul's relationship with her parents had soured somewhat, her father's departure impacted her greatly. To make matters worse, Ms. Fadul's mother, heartbroken, took the two younger children and moved to the Dominican Republic, leaving only Ms. Fadul behind. Suddenly she felt very much on her own, without a high school degree and with a newborn child she was ill-equipped to care for.

**Despite the difficulties** of her situation, Ms. Fadul embraced motherhood. She loved Celeste profoundly, and knew she would have to provide for her without assistance from anyone else. She enrolled at Monroe College and worked hard to eventually earn her GED and a college diploma in word processing, all the while

caring for Celeste. She did clerical work at various offices. She went wherever she could find a job.

While attending Monroe, Ms. Fadul met a new boyfriend, Enrique Delarosa, with whom she would have three more children. They moved in together on Claflin Avenue in the Bronx. Her daughter, Yazmin Delarosa, was born in 1994; her twin sons, B.D. and R.D., were born in 1996. Those early years with Enrique and her four young children were happy ones, despite the fact that Enrique cheated on her frequently. She was willing to overlook his infidelity because he was otherwise kind to her and a good father to the children. She and Enrique had their problems but they were best friends.

In 2001, Enrique died suddenly from a heart attack. Ms. Fadul was bereft; her children were without a father and she was again responsible for them entirely on her own.

But, once again, in the face of adversity Ms. Fadul refused to wallow in self-pity. In 2002 she found a steady job with H.S.C. Management—a residential and commercial buildings management company—as an assistant to a property manager. It was a good job that enabled her to provide at least the essentials for her four children. She would work there for over a decade. As her mother states, "Since the death of her children's father, [Ms. Fadul has] struggled by herself in order to support her children." Exhibit A.

**Ms. Fadul and her children** are remarkably close; their great affection for each other is evident to anyone who spends even a small amount of time with them. To a person, those who have known Ms. Fadul over many years describe her as a devoted and loving mother. Ms. Fadul's cousin says, "She has been on her own for many years, ever since she was a teenager she has learned to always stand up tall and fend for herself and her children. Her children are her world …" Letter from Yahayra Gonzalez (Exhibit C).

It might be easy to criticize Ms. Fadul for being overly permissive with her children, especially given the circumstances of her misconduct in this case. But she became a

mother when she was still an adolescent herself. She knows that she has made mistakes and that, in an effort to provide the best life possible for her children, she may have done just the opposite. She will likely miss the twins' high school graduation. Yazmin, now pregnant, faces the possibility of giving birth in prison.

But, however misguided some of Ms. Fadul's choices as a parent, she always operated from a place of love, and she never intended for them to be harmed in any way. As her aunt writes,

> [Ms. Fadul's] strength and commitment to her children is unbelievable. To raise two girls and boy twins in the heart of the Bronx is not an easy task. Every time her children tried to get into mischief she was there to stop them. She made sure they went to school. She is always encouraging them …

Letter from Ivette Duarte (Exhibit D).

Indeed, unlike many teenagers in their Bronx neighborhood, Ms. Fadul's twin sons are both on track to graduate high school and have plans to enroll in college. B.D. writes of his mother, "She pushed me hard to get to that stage and I know it will make her very happy to see me graduate and help me pick out my colleges." Letter from B.D. (Exhibit E). *See also* Additional Letters of Support (Exhibits F–H).

## Ms. Fadul's Participation in the Offense

Everything changed when Ms. Fadul met Kenneth Garcia around 2004. Enrique had died several years before, leaving Ms. Fadul to fend for herself and her children on her own. She was lonely and desperate for a partner with whom she could share her life and who could help with her children. Mr. Garcia was charming, a smooth talker. More importantly, he was great with the kids. She was captivated by him.

But Mr. Garcia also had a darker side. He could be verbally abusive and manipulative. He frequently screamed at Ms. Fadul. And, though he had legitimate sources of income, including work as a barber, she knew he was involved in the drug business. She knew she never should have let him into her life. But she was

Honorable Jesse M. Furman                                November 10, 2014
United States District Judge                              Page 6 of 10

Re:   *United States v. Judith P. Fadul*
      S2 13 Cr. 143 (JMF)

moved by his promise that he would someday go straight and move her and her children out of New York. She imagined a life with him and her children away from the fast pace of the city. She fell deeply in love.

At first, they maintained a long-distance relationship, with Mr. Garcia living in Vermont. She turned a blind eye to much of his illegal activities. Well into her 30s, she had never before been in trouble with the law, and she did not want to start now. When Mr. Garcia went to prison on drug charges in Vermont in 2010 and was then released in 2012, however, her participation in his drug business ratcheted up. Simultaneously, and not coincidentally, her personal drug use, which had before been mainly social, became pronounced. She was using cocaine and marijuana almost every day. She was eventually laid off from her job with H.S.C. The moral code that had successfully guided her life until that point was coming undone.

Among other things, Ms. Fadul allowed Mr. Garcia to move into her apartment on Claflin Avenue, where he used the apartment to package drugs to have them taken to Vermont. Once there, he and other members of his organization would sell the drugs for higher prices than they could command in New York. She allowed Mr. Garcia to keep his gun in their bedroom. And she received Western Union transfers of drug proceeds from various members of the drug organization in Vermont. So deep was her misguided love for Mr. Garcia that when the NYPD searched her apartment in September 2012, she lied to protect him—she falsely claimed responsibility for contraband that belonged to him. She had fallen very far indeed.

### Events Since Her Arrest

Following her arrest in September 2012, Ms. Fadul took seriously her obligation to turn her life around. While on pretrial release, after some early slip-ups, including positive drug tests for marijuana and cocaine, she buckled down and accomplished many impressive things. In August 2014 she completed a drug treatment program at Daytop Village in the Bronx. She has been drug free for well over a year.

She also diligently attended multiple job training programs. Her hard work paid off in September 2014 when she landed a good job as a clerical assistant in the medical

Honorable Jesse M. Furman  November 10, 2014
United States District Judge  Page 7 of 10

Re:   *United States v. Judith P. Fadul*
      S2 13 Cr. 143 (JMF)

records department of Bellevue Hospital, working 35 hours a week. She loved getting back to work; in the past, her long history of working to support her children had been a source of great pride for her.

As the Court knows, in October 2014 she and several others were arrested after the NYPD searched her apartment and found large quantities of drugs hidden in a bedroom that was not hers. Police also found several bags of marijuana in Ms. Fadul's bedroom that belonged to her boyfriend. Ms. Fadul has not been indicted in that case. It appears that Yazmin's boyfriend, who occasionally stayed at the apartment and who was present during the search, has admitted that the larger-quantity drugs found there belonged to him.

One recognizes, of course, that this new arrest does not, at least at first blush, speak well of Ms. Fadul's efforts to change. But she had no idea there were large quantities of hard drugs in her apartment. She expects to be vindicated on that score in state court. In any event, Ms. Fadul knows she was wrong not to be more assiduous in monitoring who stayed in her apartment and what they might have brought into it.

## The Appropriate Sentence

A lengthy prison term for Ms. Fadul would serve no useful purpose. The Court should impose a sentence far below the advisory—and, frankly, grossly disproportionate—Guidelines range, to be followed by a substantial period of supervised release.

An analysis of Ms. Fadul's personal history and characteristics and how they intersect with her participation in the offense militates against a harsh sentence. *See* 18 U.S.C. § 3553(a)(1). To begin, she is a first-time offender in her 40s whose crime, though serious, was nevertheless non-violent.[3] She is a single mother who has struggled admirably to provide for her children on her own. To be sure, she has made some poor decisions, but her love for her children is unquestionable.

---

[3] Ms. Fadul is of course regretful that she allowed Mr. Garcia to keep his gun in their bedroom. But there is no dispute that it was *his* gun, not hers, and she accordingly has not been held responsible for it in her plea agreement.

Honorable Jesse M. Furman                                                  November 10, 2014
United States District Judge                                                     Page 8 of 10

Re:    *United States v. Judith P. Fadul*
        S2 13 Cr. 143 (JMF)

It is important to remember that Ms. Fadul had her first child, Celeste, when she was basically still a child herself. And, at the time, she was on her own—her family had broken apart and she wanted nothing to do with the father of her newborn child, an abusive alcoholic. No one was by her side in those early years to teach her how to be a parent. She did the best she could with almost no support.

By the time she met Kenneth Garcia, she was struggling by herself with four children. She had been in some damaging relationships in the past that were characterized by abuse and abandonment. She desperately wanted a partner with whom she could share her life. Mr. Garcia was charming and her children quickly grew attached to him. The truth is she loved him and looked past his deficiencies despite her better instincts. Even when he cheated on her with other women she took him back. She explains it like this: "I just didn't want to be alone again. I wanted to be happy. I wanted to be a family."

Over time Ms. Fadul came to participate in Mr. Garcia's drug business. At the same time she descended further into her own drug abuse. As a result, she lost her job. At this point, no one is more critical of her decisions than she. She regrets them profoundly. She regrets most of all that her daughter, Yazmin, now sleeps next to her in jail. She cries herself to sleep at night. Her remorse is genuine. Lengthy prison time is not necessary to further deter her. *See* 18 U.S.C. § 3553(a)(2)(C).

Nor is lengthy incarceration necessary for the purpose of general deterrence, "a phenomenon that is notoriously difficult (and perhaps impossible) to measure." *United States v. Brady*, No. 02 CR 1043(JG), 2004 WL 86414, at *9 (E.D.N.Y. Jan 20, 2004); *see* 18 U.S.C. § 3553(a)(2)(B). As our Attorney General has recognized, "High incarceration rates and longer-than-necessary prison terms *have not* played a significant role in materially improving public safety, reducing crime, or strengthening communities. In fact, the opposite is true … We know that over-incarceration crushes opportunity." Eric Holder, *Shifting Law Enforcement Goals to Reduce Mass Incarceration*, Keynote Address Before the Brennan Center for Justice (September 23, 2014) (emphasis in original), available at http://www.brennancenter.org/analysis/keynote-address-shifting-law-enforcement-goals-to-reduce-mass-incarceration. Indeed, evidence-based studies support the conclusion that it is the certainty of *apprehension* rather than the severity of the ensuing legal

Honorable Jesse M. Furman  November 10, 2014
United States District Judge  Page 9 of 10

Re:   *United States v. Judith P. Fadul*
      S2 13 Cr. 143 (JMF)

*punishment* that more effectively deters crime. *See, e.g.*, Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 202 (2013) (reviewing empirical deterrence studies and their attendant literature). Ms. Fadul's apprehension and felony conviction by themselves send a strong message to others who might commit similar crimes. The Court need not make an example of Ms. Fadul on general deterrence grounds.

Nor is there any other legitimate reason to impose a lengthy prison term. Of course, the Court must consider the need to provide "correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). It is beyond cavil that prison does not provide such treatment. Ms. Fadul should be placed back into drug treatment and counseling to ensure she does not return to abusing drugs and to address her history of abuse and abandonment, and the role that history has played in her life's choices. These things would rehabilitate Ms. Fadul and protect society at large more effectively than prison time.

At bottom, Ms. Fadul is a good woman who made some serious mistakes. She is not beyond redemption. I respectfully urge the Court to fashion a sentence that considers the full measure of both the person she has been and the person she can become.

* * *

Honorable Jesse M. Furman  November 10, 2014
United States District Judge  Page 10 of 10

Re:    *United States v. Judith P. Fadul*
       S2 13 Cr. 143 (JMF)

For the reasons discussed, I respectfully request that the Court impose a sentence far below the advisory Guidelines range to be followed by a substantial period of supervised release.

Respectfully submitted,


<u>/s/ Jonathan Marvinny</u>
Jonathan Marvinny
Assistant Federal Defender
(212) 417-8792
jonathan_marvinny@fd.org