UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

            - v. -                          :          13 Cr. 143 (JMF)

JUDITH P. FADUL,                            :

                    Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States of America


Edward B. Diskant
Drew Johnson-Skinner
Assistant United States Attorneys
        - Of Counsel -

The Government respectfully submits the following memorandum in connection with the sentencing of Judith Fadul (the "defendant"), which is scheduled for November 24, 2014.   For the reasons that follow, the Government submits that a sentence within the parties' stipulated Guidelines range of 87 to 108 months' imprisonment would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing set forth in Title 18, United States Code, Section 3553(a).

## I.  BACKGROUND

### A.    <u>Offense Conduct</u>

Fadul was initially arrested in September 2012 by members of the New York City Police Department ("NYPD") following a search of her apartment on Claflin Avenue, Bronx, New York (the "Apartment").  During that search, officers found a firearm, drugs, drug paraphernalia, counterfeit U.S. currency, and counterfeiting equipment.[1]  Fadul was arrested federally in January 2013 and charged in an indictment filed in February 2013 with counterfeiting offenses in violation of 18 U.S.C. §§ 472 and 541(a)(1).

Fadul was subsequently charged in November 2013 in superseding indictment S2 13 Cr. 143 (JMF) (the "Indictment").  The Indictment charges Fadul in five counts.  Count One charges Fadul, along with co-defendants Kenneth Garcia ("Garcia"), Yasmin Delarosa ("Delarosa"), Paul Brown, Brian Garcia, Jesus Mena, Brandi Mitchell, Jayro Custodio, and Rebecca Lawrence (collectively, the "defendants") with conspiring to distribute narcotics, specifically, cocaine, crack, heroin, marijuana, and ecstasy, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D), and 846.  Count Two charges Fadul and Garcia with

---

[1] Although this evidence was subsequently suppressed, the Court is permitted to consider at sentencing evidence that would be suppressed at trial.  *See United States* v. *Tejada*, 956 F.2d 1256, 1260-62 (2d Cir. 1992); *United States* v. *Schipani*, 435 F.2d 26, 28 (2d Cir. 1970).

possessing a firearm in furtherance of the narcotics trafficking conspiracy charged in Count One, in violation of 18 U.S.C. §§ 924(c) and 2.  Count Four charges Fadul with maintaining a drug-involved premises at the Apartment in violation of 21 U.S.C. § 856.  Counts Five and Six charge Fadul and Garcia with possessing and printing, respectively, counterfeit U.S. currency, in violation of 18 U.S.C. §§ 472 and 514(a)(1).

The charges stem from the defendants' participation in a multi-state drug trafficking organization, which involved transporting crack, cocaine, and heroin from New York to Vermont for resale (the "DTO").  Fadul ran the DTO, along with her then-boyfriend Garcia and her daughter Delarosa, from their base of operations at Fadul's Apartment in the Bronx.  Garcia, Fadul, and Delarosa ran the DTO with the assistance of a series of co-conspirators whom they paid in cash and drugs to: (1) package narcotics in the Bronx, (2) transport those narcotics from the Bronx to Vermont, generally by "body packing" those drugs and driving them north; and (3) resell those drugs to addicts and other, lower-level suppliers in various areas of Vermont where the heroin they sold, in particular, commanded a far higher street value than in the New York area.  Various members of the DTO then remitted the drug proceeds, generally via Western Union or Money Gram transfers, back to Fadul and others in the Bronx.  In addition to their involvement in narcotics, Garcia, Fadul, and Delarosa, among others, produced counterfeit U.S. currency which they used and attempted to use in their dealings with their drug suppliers and their customers.

Fadul played numerous roles in the conspiracy, including storing and transporting narcotics, as well as receiving the proceeds of the Vermont narcotics sales.  With respect to the former, at trial, the Government would have offered the testimony of multiple cooperating witnesses as to Fadul's role in handling narcotics being stored in the Apartment as well as to her

participation in transporting those narcotics—typically by "body packing" bundles of heroin and plastic bags of crack cocaine—from the Apartment to Vermont where the drugs were resold by other members of the DTO.

With respect to the latter, evidence gathered during the investigation revealed that the DTO's profits were frequently sent back from Vermont to New York via Western Union or Money Gram transfers in Fadul's name. During the time period of the charged conspiracy, Fadul alone received more than $50,000 in such transfers, all from other members of the DTO, including many of her co-defendants in this case.

In addition to the above, Fadul maintained her Apartment as a base of operations for the DTO. Under Garcia's and Fadul's direction, the DTO used Fadul's Apartment to package narcotics and provide them to co-conspirators for resale in Vermont to users.

Finally, Fadul was also involved in the DTO's counterfeiting activities. In particular, Fadul was involved in producing and cutting sheets of counterfeit currency—activities which also occurred in the Apartment—so that various members of the DTO could use that counterfeit currency in furtherance of the DTO's activities in both Vermont and New York.

**B.**     **The Defendant's Guilty Plea**

On August 5, 2014, Fadul pleaded guilty pursuant to an agreement with the Government for her role in the narcotics conspiracy. Pursuant to the terms of that agreement, the Government accepted a guilty plea to the lesser included offense in Count One of the Indictment of conspiring to distribute heroin and cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). As reflected in the terms of that agreement, Fadul's involvement in the DTO's activities was substantial—as a condition of the plea agreement, Fadul accepted responsibility for her direct involvement in trafficking at least 100 grams of cocaine base and 1 kilogram of

heroin.  In the terms of this DTO, which involved street-level sales to users in one-tenth gram amounts of these drugs, Fadul is responsible for the distribution of at least 1,000 individual-use bags of crack cocaine and 10,000 individual-use bags of heroin.

      **C.**      **The Defendant's Post-Plea Conduct**

While on release pending sentencing, Fadul was arrested on or about October 16, 2014, at her Apartment in the Bronx (the "2014 State Arrest").  While executing a search warrant, NYPD officers observed Fadul and another person in Fadul's bedroom in the Apartment.  In Fadul's bedroom were four bags containing a substance believed to be marijuana and $536 in currency.  In another bedroom, officers observed Delarosa—also out on bail pending sentencing—and another person.  In that bedroom, officers found a purse containing 53 glassines of a substance believed to be heroin and 29 bags of a substance believed to be crack cocaine and also found a straight razor, a white plate with a white powdery residue, and $928 in currency.  On the ground underneath an open window of that bedroom, officers found a digital scale, a mason jar containing a substance believed to be marijuana, and a twist containing a substance believed to be crack cocaine.  Finally, in a third bedroom occupied by Fadul's twin sons, officers found additional drug paraphernalia and a substance believed to be marijuana residue.

Fadul was charged in a complaint filed in Bronx County Criminal Court on October 16, 2014, with criminal possession of a controlled substance in the third degree, in violation of New York Penal Law section 220.16(1), criminal possession of a controlled substance in the seventh degree, in violation of New York Penal Law section 220.03, criminally using drug paraphernalia in the second degree, in violation of New York Penal Law section 220.50(2), criminally using drug paraphernalia in the second degree, in violation of New York Penal Law section 220.50(3), criminal possession of marijuana in the fifth degree, in violation of New York Penal Law section

221.10(1), and unlawful possession of marijuana, in violation of New York Penal Law section 221.05 (the "2014 State Complaint").

On October 16, 2014, the Hon. J. Paul Oetken signed a warrant for Fadul's arrest, finding probable cause to believe that Fadul had committed a Federal, State, or local crime while on release. *See* 18 U.S.C. § 3148(b)(1)(A). On October 21, 2014, Fadul appeared before Your Honor at which time an order of remand pending sentencing was entered.

> **D.**     **The Guidelines**

Consistent with the terms of the parties' plea agreement, and as independently confirmed in significant part by the U.S. Probation Department in its Presentence Report ("PSR"), the Government believes that the November 1, 2014 Guidelines manual is applicable to the defendant in the following manner:

The Sentencing Guideline applicable to the offense charged in Court One of the Indictment is U.S.S.G. § 2D1.1. Fadul was responsible for the distribution of at least 100 grams of cocaine base and 1 kilogram of heroin. Pursuant to the Drug Equivalency Tables provided in U.S.S.G. § 2D1.1 Commentary Note 8, one gram of cocaine base is equivalent to 3,571 grams of marijuana. Accordingly, 100 grams of cocaine base is equivalent to 357.1 kilograms of marijuana. Pursuant to the Drug Equivalency Tables, one gram of heroin is equivalent to 1 kilogram of marijuana. Accordingly, 1 kilogram of heroin is equivalent to 1,000 kilograms of marijuana. Fadul's offense thus involved an amount of cocaine base and heroin that is equivalent to 1,357.1 kilograms of marijuana. Pursuant to U.S.S.G. § 2D1.1(c)(5), the base offense level is 30, because the offense involved at least 1,000 kilograms but less than 3,000 kilograms of marijuana.

Pursuant to U.S.S.G. § 2D1.1(b)(12), two levels are added because Fadul maintained a premises, namely the Apartment, for the purpose of manufacturing or distributing controlled substances in connection with the offense charged in Count One of the Indictment.  Thus, Fadul's adjusted offense level is 32.

Pursuant to U.S.S.G. § 3E1.1(a) and (b), a three-level reduction is warranted for the defendant's timely demonstration of acceptance of responsibility.  Fadul's total adjusted offense level is thus 29.

As explained in the parties' plea agreement and the PSR, Fadul has no criminal history points, which places Fadul in Criminal History Category I.  (PSR ¶¶ 61-64).  Accordingly, with an offense level of 29 and a Criminal History Category of I, the defendant's advisory, applicable Guidelines range is 87 to 108 months' imprisonment (the "Stipulated Guidelines Range").

Probation's calculation, as set forth in the PSR, differs from that of the parties only insofar as Probation declined to give the defendant credit for the two-level downward adjustment for certain drug quantities effective November 1, 2014, and thus calculates a total adjusted offense level of 31.  (PSR ¶ 60).  Consistent with the terms of U.S.S.G. § 1B1.11 and accompanying commentary, the Government submits that the calculation as set forth in the PSR is incorrect in this limited respect and would thus urge the Court to adopt the parties' calculation as set forth above.

## II.  DISCUSSION

In light of the need to deter this defendant from future criminal activity and the serious nature of Fadul's offense, the Government respectfully submits that a sentence within the parties' Stipulated Guidelines Range of 87 to 108 months' imprisonment would be sufficient, but not

greater than necessary, to serve the legitimate purposes of sentencing.  Application of the factors

set forth in 18 U.S.C. § 3553(a) weighs strongly in favor of such a sentence.

*First*, a sentence within the Guidelines range is necessary to reflect the seriousness of

Fadul's offense, to promote respect for the law, and to provide just punishment.  *See* 18 U.S.C.

§ 3553(a)(1), (a)(2)(A).  As discussed above, Fadul played a major and continuing role in a

significant drug trafficking organization.  Over a multi-year period, Fadul repeatedly transported

narcotics from the Bronx to Vermont and received the proceeds of the drug sales.  In so doing,

Fadul not only substantially contributed to the DTO's activities—activities that, in total, involved

kilogram quantities of heroin and crack, in particular—but she directly contributed to a state-

wide heroin epidemic in Vermont.

It bears particular mention in the context of this case, that Fadul's conduct was not fueled

by her own drug addiction—addictions on which Fadul and Garcia preyed in recruiting workers

for their DTO whom they paid in drugs—but rather by a desire to make money.  Indeed,

narcotics trafficking was clearly a way of life for Fadul, so much so that even after her arrest on

these charges and while on release, Fadul continued to use and allow her Apartment to be used as

a drug den.  A sentence within the Stipulated Guidelines Range is thus warranted to reflect the

seriousness of Fadul's conduct and to provide just punishment for her crimes.

*Second*, a sentence within the Stipulated Guidelines Range is necessary and appropriate

to deter Fadul from future criminal conduct.  *See* 18 U.S.C. § 3553(a)(2)(B)-(C).  Indeed, Fadul

has made pellucidly clear that nothing short of an incarceratory term will deter her from

engaging in additional criminal activity.  As the recent 2014 State Arrest shows, Fadul is willing

to return to the same way of life for which she was convicted and for which she now stands

before the Court to be sentenced.   It bears particular mention, in this regard, that despite

previously being arrested for using her Apartment as a base of operations for a drug trafficking conspiracy, Fadul was found as recently as October 2014 engaging in the very same conduct, namely, using or allowing her Apartment to be used as a base for a drug trafficking operation. As noted above, at the time of the 2014 State Arrest, state officers found marijuana in her bedroom, distribution quantities of heroin and crack cocaine in another bedroom, and drug paraphernalia, including a scale, ziplock bags, a razor, and a plate with a white powdery residue, in the Apartment and on the ground outside of an open window of the Apartment. (*See* 2014 State Complaint at 1-3).

General deterrence is a also factor that should weigh heavily on the Court in imposing sentence. As the Court is well aware, drug trafficking is a very serious crime, with heroin trafficking, in particular giving rise to increasing and alarming numbers of victims. Nearly 670,000 Americans reported using heroin in 2012, the last year for which statistics are available, and a remarkable jump from the approximately 370,000 Americans who reported using heroin just five years earlier.[2] And nearly 40,000 Americans die each year from drug overdoses, with 75 percent of those deaths resulting from the use of heroin or other opioids.[3] Sending a strong message that drug trafficking is a serious crime which will carry serious penalties is both necessary and appropriate under the circumstances.

*Third*, a sentence within the Stipulated Guidelines Range would not create any unwarranted disparities among similarly situated defendants. *See* 18 U.S.C. § 3553(a)(6). Fadul's role in the DTO was substantially greater and her conduct more serious than that of her lower-level co-conspirators like Rebecca Lawrence, Jesus Mena, and Paul Brown. In the

---

[2] *See* "Addict, Informant, Mother," *The New York Times*, May 11, 2014, *available at:* http://www.nytimes.com/2014/05/11/magazine/addict-informant-mother.html?hpw&rref=magazine (citing DEA statistics).

[3] "Heroin: America's Silent Assassin," *The Daily Beast*, February 3, 2014, *available at*: http://www.thedailybeast.com/articles/2014/02/03/heroin-america-s-silent-assassin.html

Government's view, Fadul's culpability in this case is second only to that of Garcia.  In contrast to the lower-level conspirators who have already been sentenced, Fadul has no prior criminal convictions.  Her offense conduct and the need to specifically deter Fadul, however, warrant a substantially longer period of incarceration than the sentences meted out to other co-conspirators.

In seeking a sentence substantially below the Stipulated Guidelines Range, Fadul's sentencing submission notes her close relationship with her children and her struggle to provide for them on her own.  (Sentencing Submission at 4-5, 7-8).  However, Fadul has brought her children into the purview of the DTO's activities.  As the Court is well aware at this point, Fadul's daughter Delarosa was a co-conspirator and substantial participant in the DTO.  Fadul's sons have been found in close proximity to the DTO's drugs and counterfeit currency, including during the initial September 2012 arrest.  (PSR ¶ 34).  It is thus far from clear that Fadul's relationship with her children counsels in favor of a sentence below the Stipulated Guidelines Range.  To the contrary, Fadul's sentence should reflect the serious nature and impact of her conduct.

Similarly, Fadul's assertion that she has now been sufficiently deterred from this conduct—only after her and Delarosa's *second* arrest for drug trafficking activity in the same apartment—rings somewhat hollow given the history of this case.  (Sentencing Submission at 8).  In particular, Fadul's 2014 State Arrest and the serious nature of her conduct in running the DTO speak directly to the need for a substantial period of incarceration to ensure specific deterrence for this defendant.

### III.  CONCLUSION

For the foregoing reasons, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 87 to 108 months is appropriate here and would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

Dated:  New York, New York
        November 17, 2014

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              Southern District of New York

By:         /s/                       
                              Edward B. Diskant
                              Drew Johnson-Skinner
                              Assistant United States Attorneys
                              (212) 637-2294/1587